USDC SDNY
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/10/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x
                                                                     :
MOISES RONE,                                                         :   **ORDER AND OPINION**
                                                                     :   **GRANTING HABEAS**
                                                                     :   **CORPUS TO ALIEN**
                                                                     :   **SEEKING BAIL HEARING**
                                Petitioner,                          :   **PENDING REMOVAL**
                                                                     :
          -against-                                                  :   15 Civ. 9063 (AKH)
                                                                     :
                                                                     :
CHRISTOPHER SHANAHAN, et al.,                                        :
                                                                     :
                                                                     :
                                Respondent.                          :
                                                                     :
-------------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

          In 2013, the last year for which the Department of Homeland Security makes

official data available, U.S. Immigrations and Customs Enforcement (ICE) detained 440,557

aliens.  John F. Simanski, Immigration Enforcement Actions: 2013, *available at*

https://www.dhs.gov/publication/immigration-enforcement-actions-2013.  (Sept. 2014).  A

person may be detained, and under circumstances, must be detained, while legal proceedings

play out to determine whether the person must be removed from the United States. There are two

statutory bases for immigration detention—one which provides for detention while immigration

courts determine eligibility for removal, and one which provides for detention in the period after

that determination, but before the person is physically deported.  The courts have established

differing standards to determine when a detainee may be released on bail, depending on which

statute governs the alien's detention.

          This petition for a writ of habeas corpus, by a person in detention while

immigration proceedings concerning his removal from the United States wind their way to a

1

conclusion, raises significant constitutional issues. Petitioner has been in immigration detention almost two years. Is he entitled to bail while judicial review of immigration decisions remain pending? What criteria govern his bail application? Is he to be released unless the government proves by clear and convincing evidence that he presents a risk of flight or threat to public safety? *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015). Or is his detention to be judged in relation to the probability and imminence of his deportation? *Zadvydas v. Davis,* 533 U.S. 678 (2001). From a statutory perspective, does the pre-final order of removal provisions of section 236 of the Immigration and Nationality Act, or the post-final order of removal provisions of section 241 apply? *Compare* 8 U.S.C. § 1226, *with* 8 U.S.C. § 1231.

I hold, for the reasons stated in this opinion, that petitioner has shown that his constitutional due process rights have been violated, and I grant the petition, but with conditions.

## I.  Background and Prior Proceedings

### A.  Criminal Conviction, Appeal, and Habeas Petition Alleging Ineffective Assistance of Counsel

Petitioner Moises Rone, a citizen of the Dominican Republic, entered the United States on July 15, 1999 as a lawful permanent resident. *See* Gov't Opposition, Ex. 1 (Notice to Appear), *Rone v. Shanahan*, 15 Civ. 9063 (S.D.N.Y. Dec. 18, 2015), ECF No. 8-1. On June 26, 2012, Rone pled guilty to the crimes of conspiracy to commit wire fraud and aggravated identity theft. He was sentenced on February 19, 2014, to 28 months of custody, mostly all of which had been served. Judgment, *United States v. Miguel Jesurum, et al.*, 12-cr-480 (S.D.N.Y. Feb. 29, 2014), ECF Doc. No. 94. He did not appeal.

Almost a year later, on February 23, 2015, Rone, appearing pro se, petitioned for habeas corpus review to the U.S. District Court for the Southern District of New York. He did not assign a ground of error. The District Court denied his petition without prejudice. Order of

2

Dismissal, *Rone v. United States of America*, 15 Civ. 1417 (S.D.N.Y. Mar. 11, 2015), ECF No.

3. He appealed and the Second Circuit, finding in the record an allegation that his criminal

defense was constitutionally inadequate, granted him a certificate of appealability, appointed

counsel, and remanded the case to the District Court for the limited purpose of reviewing his

ineffective assistance of counsel claim. *Mandate of USCA*, *Rone*, 15 Civ. 1417 (Nov. 18, 2015),

ECF Doc. No. 7. The case is pending before Judge Edgardo Ramos.

### B. Notice to Appear Before Immigration Judge for Removal Proceedings

A month after Rone served his term of custody and was released by the Bureau of

Prisons, on March 21, 2014, U.S. Immigration and Customs Enforcement ("ICE") served him

with a Notice to Appear, thus initiating proceedings for an order removing him from the United

States. Petitioner was taken immediately into immigration detention. On December 29, 2014,

the Immigration Judge issued an order to remove petitioner from the United States to the

Dominican Republic. Order of the Immigration Judge, *Matter of Rone*, Case No. A047-137-723

(Immigration Court Dec. 29, 2014) (attached as Ex. 4 to Gov't Return). Petitioner appealed to

the Board of Immigration Appeals ("BIA"). On June 18, 2015, the BIA affirmed the order of

removal. *Matter of Rone*, Case No. A047-137-723 (B.I.A. June 18, 2015) (attached as Ex. 5 to

Gov't Return). That affirmance created administrative finality of the order for Rone's removal.

*See* 8 U.S.C. § 1101(a)(47)(B)(i).[1]

---

[1] Even before the BIA reviewed the order of the immigration judge, Rone petitioned for habeas corpus to the U.S. District Court for the Southern District of New York, seeking release from his detention. *Rone v. Holder*, 15 Civ. 2815 (S.D.N.Y. Apr. 1, 2015). He raised two issues, arguing: (1) his detention under 8 U.S.C. § 1226 was illegal because he had not been taken into immigration detention directly upon his release from his criminal sentence; and (2) that his continued and prolonged detention violated his due process rights. The Southern District held, however, that since petitioner was detained in New Jersey, venue in the Southern District of New York was not proper and, on June 5, 2015, transferred the case to the District Court for the District of New Jersey. *Rone v. Aviles*, 15 Civ. 3798, 2016 WL 158521, at *1 (D.N.J. Nov. 12, 2015). The New Jersey district court denied his petition. The district court ruled that the Third Circuit does not view the Second Circuit's forbearance policy as a stay that tolls the removal period, and a detainee generally is not entitled to the more liberal pre-removal bail considerations under section

3

The government argues that Rone's detention then became post-final order of removal detention, governed by 8 U.S.C. § 1231. Under that statute, the government is expected to take action within a 90-day "removal period," which begins on the date of the latest-occurring of three events: (i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order, or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(A).

Rone argues that his detention was under the pre-removal statute, and correspondingly more lenient bail standards, because he petitioned to the Second Circuit Court of Appeals for review of the BIA's decision, and moved that Court for a stay of his removal. *Rone v. Lynch*, No. 15-2026 (2d Cir. June 25, 2015), ECF Nos. 1, 11. The government opposed the stay. There has been no ruling on the issue and a stay has not been issued. However, under a policy of forbearance in effect in the Second Circuit, discussed below, the Department of Immigration and Customs Enforcement ("ICE") will not remove a detainee while judicial proceedings are pending. *See, e.g.*, *Wang v. Ashcroft*, 320 F.3d 130, 147 (2d Cir. 2003); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010).

## C. Petition for Review to the Second Circuit Court of Appeals

On June 25, 2015, Rone petitioned to the Second Circuit Court of Appeals for review of the BIA's decision, and moved for a stay of his removal. *Rone v. Lynch*, No. 15-2026 (2d Cir. June 25, 2015), ECF Nos. 1, 11. The government opposed the stay. There has been no ruling on

---

1226 while he awaits the completion of judicial review of the BIA decision that affirmed the order for his removal. *Id.*, at *5 ("[T]he Second Circuit's forebearance policy does not convert a petitioner's immigration detention status from Section 1231 to Section 1226."). Petitioner appealed to the Third Circuit Court of Appeals. *Rone v. Attorney General et al.*, No. 16-1050 (3d Cir. Jan. 13, 2016).

4

motion and a stay has not been issued.  However, under a policy of forbearance in effect in the Second Circuit, discussed later in this Opinion, ICE will not remove a detainee while judicial proceedings are pending. *See, e.g.*, *Wang v. Ashcroft*, 320 F.3d 130, 137 (2d Cir. 2003); *Luna-Aponte v. Holder*, 743, F. Supp.2d 189, 197 (W.D.N.Y. 2010).  Rone remained in detention.

### D.  Review by ICE of Rone's Continued Detention

Rone has been in immigration detention since March 21, 2014.  Pursuant to regulations, ninety days after the BIA, on June 18, 2015, affirmed the order for his removal, ICE, on September 15, 2015, reviewed Rone's continued detention. *See* C.F.R. § 241.4(k)(1) (interpreting 8 U.S.C. § 1231(a)(1)(A)).  Rone's detention was ordered to be continued.[2]

### E.  *Lora* Bail Hearing and Appeal to the BIA

Rone petitioned the Executive Office for Immigration Review ("EOIR") for a bond hearing, under a recently issued case, *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. Oct. 15, 2015).  That case held that an immigration detainee held pursuant to § 1226 must be afforded a bond hearing within six months of his initial detention.  A bond hearing was held November 18, 2015. *See Certified Transcript, Government's Letter, Ex. C* at 10, *Rone v. Shanahan*, 15 Civ. 9063 (Feb. 3, 2016), ECF No. 16-3.

At the hearing, the immigration judge heard evidence presented by Rone's counsel that Rone had "turned over a new leaf" in prison, earned his GED, and had received "glowing letters" that he submitted to the Court in support of being released on bond. *Id.* at 10–14.  The IJ, ruling extemporaneously on November 18, 2015, stated, "It looks like maybe he has learned a hard lesson" but, he held, "the big issue is flight risk." *Id.*

The IJ orally denied Rone's request for release on bond, ruling that petitioner's exposure to a high probability of removal created a risk of flight that outweighed the connections

---

[2] There is no written decision in the record. There may be none.

he had to family and neighborhood in New York. *Id.* at 17. The IJ also ruled on dangerousness, stating that "I have to conclude that he is a danger to the community." *Id.* While he applauded the petitioner's progress in detention, he concluded that he "ha[d] to judge a person's behavior really by when they're not in detention" and that "[Rone] didn't do too well when he was not in detention." *Id.*

Petitioner appealed to the BIA on December 10, 2015. *See* Notice of Appeal from a Decision of an Immigration Judge, *Matter of Rone*, Case No. A047-137-723 (Dec. 10, 2015) (attached as Ex. 15 to Gov't Return).

### F.  Immigration Judge's Supplementary Decisions

The IJ filed his written decision on January 4, 2016, while petitioner's appeal to the BIA was pending. The written decision, unlike the IJ's extemporaneous ruling at petitioner's bond hearing, does not evaluate flight risk or dangerousness, and rules instead that petitioner was not entitled to a bond hearing. Ex. A ("Memorandum Decision of the Immigration Judge dated January 4, 2016") to Letter, 15 Civ. 9063 (Jan. 28, 2016), ECF No. 12-1. The Immigration Judge ruled that since *Lora v. Shanahan* applies to detainees only before a final order of removal is issued, *see* 8 U.S.C. § 1226, and since a final order of removal had issued on June 18, 2015 when the BIA affirmed the order for removal issued by the IJ, Rone was not entitled to an individualized bond hearing under *Lora v. Shanahan*, and it therefore was irrelevant whether or not he was a flight risk or posed danger to the community.[3]

On February 3, 2016, the immigration judge issued a "clarified and amended" written decision (his third decision), considering the effect of the Second Circuit's rule of

---

[3] The Immigration Judge did not consider the issue of whether the forbearance policy, and resulting absence of a decision on Rone's motion for a stay of removal in the Second Circuit, should toll the beginning of the 90-day removal period.

6

forbearance.  He ruled that forbearance was not the equivalent of an explicit stay.  The IJ

reasoned that "if the Second Circuit wished for its holding to extend to all situations where a

Respondent had been held for six months or more, surely, it would have said so." *See* Exh. B to

Letter, at 2, 15 Civ. 9063 (Feb. 3, 2016), ECF No. 16-2.

### G. BIA Affirms the Denial of Bail

On February 25, 2016, BIA issued its order affirming the IJ's denial of bail.  The BIA

held that the IJ's authority to set bond conditions "ceases at the entry of a final administrative

order," and that since neither the IJ nor the BIA "has regulatory authority to set bond conditions

[after] a final administrative order has been entered in [petitioner's] removal case," petitioner is

not eligible for a bond hearing pursuant to *Lora v. Shanahan*.  The BIA concluded that Rone had

no entitlement to a *Lora* hearing, because the post-removal order detention statute governed his

continued detention. *In re Moises Rone,* File A047 137 723 (B.I.A. Feb. 25, 2016) (attached as

Ex. 1 to Letter, 15 Civ. 9063 (S.D.N.Y. Mar. 1, 2016),   E.C.F. No. 22-1).

### II. The Instant Petition for Habeas Corpus

On the same day that the IJ denied bail to the petitioner, November 18, 2015, even

before he appealed to BIA, petitioner filed a petition for habeas corpus in this court, challenging

the adequacy of his *Lora* bond hearing. See 28 U.S.C. § 2241 (authorizing district court to grant

writ of habeas corpus whenever a petitioner is "in custody in violation of the Constitution or laws

or treaties of the United States."); *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting

28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (petition under §

2241 is the basic method for statutory and constitutional challenges to detention following order

of removal).

Rone argues that his hearing was constitutionally deficient because the IJ erred by basing his decision "solely" on the administrative finality of the order for his removal from the United States. He claims that the government failed to satisfy their burden to show by clear and convincing evidence that he was either a flight risk or danger to the community, and that it was unconstitutional for the IJ to base his denial of bond solely on the BIA affirmance of the order of removal. He seeks relief in the form of his release from detention or, in the alternative, a new comprehensive bond hearing before a federal district judge, magistrate judge, or a different immigration judge.

As the case developed, Rone also argued that the IJ's written bond memorandum, which is "meant to memorialize the IJ's oral decision at the hearing," instead "distort[ed] what took place" and inappropriately "offer[ed] a post-hoc rationale for the denial of bond." *Petitioner's Letter re: IJ Bond Memorandum*, at 1, ECF No. 12 (Jan. 28, 2016). He asserts that only the oral determination based on the evidence of flight risk and dangerousness should have been considered. Letter, 15 Civ. 9063, ECF No.17 (Feb 5, 2016).

The Government argues that Rone should be estopped from re-litigating whether his detention was pre- or post-removal, because the New Jersey District Court previously decided that he was a post-removal detainee and, in the absence of a stay order, he was not entitled to a *Lora* bond hearing. *Rone v. Aviles*, 15 Civ. 3798, 2016 WL 158521, at *3 (D.N.J. Nov. 12, 2015). The government also argued that Rone failed to exhaust his administrative remedies, but that argument is now moot in light of the BIA's decision affirming the denial of bond. *Cf. Herrera v. Mechkowski*, No. 15-cv-07058 (GBD), 2016 WL 595999, at *1 (S.D.N.Y. Feb. 11, 2016); *Molina Posadas v. Shanahan*, No. 15-cv-5691(AT), 2016 WL 146556, at *1 (S.D.N.Y. Jan. 12, 2016).

## III. Legal Framework

Separate provisions of the Immigration and Nationality Act govern the detention of aliens before and after they are ordered removed. Section 1226 "governs the detention of aliens against whom the Government has initiated removal proceedings, but whose removal periods have not yet commenced." *Wang v. Ashcroft,* 320 F.3d at 146.  Section 1231 "governs the detention of aliens subject to final orders of removal." *Id.* at 145.

### A. Pre-Removal Detention

Section 236 of the Immigration and Nationality Act, 8 U.S.C. § 1226, governs the "Apprehension and detention of aliens," and applies to detentions during pre-removal-order proceedings.  It provides:

> (c) Detention of criminal aliens
>> (1) Custody
>> The Attorney General shall take into custody any alien who--
>>> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>>> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>>> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or
>>> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

### B. Post-Removal Detention

Section 241 of the Immigration and Nationality Act, 8 U.S.C. § 1231, governs the "Detention and removal of aliens ordered removed." It provides:

> (a) Detention, release, and removal of aliens ordered removed
>> (1) Removal period
>>> (A) In general

9

Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

(B) Beginning of period
The removal period begins on the latest of the following:
(i) The date the order of removal becomes administratively final.[4]
(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

(C) Suspension of period
The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

(2) Detention
During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

Thus, the statutes applicable to mandatory removals categorically require detentions. Under section 236, the Attorney General "shall take into custody" aliens while removal proceedings are brought against them. Under section 241, after an order of removal becomes final, and during the 90-day removal period, the Attorney General "shall detain the alien," and "under no circumstance" release him. In practice, however, proceedings can take longer than Congress envisioned, and periods of detention can stretch to considerable lengths. In

---

[4] 8 U.S.C. § 1101(a)(47)(B)(i) provides that a removal order is final upon the conclusion of review by the IJ and, following appeal, by the BIA.

10

*Zadvydas v. Davis*, 533 U.S. 678 (2001) and *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015),
lengthy detentions subsequent to, and prior to, orders of removal threatened to infringe
constitutional rights to due process, guaranteed to aliens and citizens alike.

### C. *Zadvydas v. Davis*

Kestutis Zadvydas was a resident alien, born in 1948 of supposed Lithuanian
parents in a displaced persons camp in Germany, who had lived in the United States since he was
eight years old. *Zadvydas v. Davis*, 533 U.S. 678, 678 (2001). He had a long criminal record of
drug crimes, robbery and burglary and, after serving his prison term, he was taken into INS
custody and ordered deported to Germany. *Id.* However, he could not be deported, because
Germany, Lithuania and the Dominican Republic (his wife's country) would not accept him. *Id.*
INS continued to detain him, even without a prospect for his deportation, and he brought a
habeas corpus proceeding to secure his release. *Id.*; 28 U.S.C. § 2241.

The Supreme Court, reviewing that and a companion case, held that habeas
corpus was a proper way to test if a post-removal-period detention was constitutional. Here, the
Supreme Court held, the statute should be interpreted not to mandate indefinite detention, for
indefinite detentions without adequate procedural safeguards could violate the constitutional
right of resident-aliens not to be deprived of their liberty without due process of law.

The Supreme Court stated the basic issue as "whether the detention in question
exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699–700. For
the sake of "uniform administration in the federal courts," the Supreme Court established a
presumption of six months as a reasonable period of detention while an order of removal is
carried out. If, after that six-month period, the alien "provides good reason to believe that there
is no significant likelihood of removal in the reasonably foreseeable future, the Government must

11

respond with evidence sufficient to rebut that showing." *Id*. at 701. An alien "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If there is not such a significant likelihood of removal, the government's concern about "'ensuring the appearance of aliens at future immigration proceedings'" would be "weak or nonexistent." *Id*. at 690 (quoting government's brief). As for the second concern governing release from detention, ensuring the safety of the community, the detention in question, since it is civil in nature and non-punitive, would be a "preventive detention based on dangerousness," available "only when limited to specially dangerous individuals and subject to strong procedural protections." *Id*. at 690–91.

### D. *Lora v. Shanahan*

Alexander Lora, born in the Dominican Republic but a lawful permanent resident of the United States for 25 years, was taken into custody by ICE pending removal proceedings. Lora had been convicted in the New York State courts of a drug-related offense and, at the time of detention, was serving a term of probation for the offense. *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015). He had gainful employment, a stable family life, and substantial ties to the community, and believed that he could successfully petition the State court to reduce his conviction to a lesser crime that would not trigger the mandatory removal proceedings of section 236 of the Immigration and Nationality Act—a procedure that soon came to pass. However, ICE would not release him from detention, citing the mandatory detention provisions of section 236.

Lora petitioned to ICE for cancellation of removal, and to the district court for habeas corpus to obtain a bail hearing and, thereby, release from detention. The district court (Peck, M.J.) awarded bail, finding a technical statutory ground. The Court of Appeals,

disagreeing, nevertheless affirmed, but on constitutional grounds. The Court of Appeals recognized that although detention of "deportable aliens during the limited period necessary for their removal proceedings was constitutional," "indefinite detention" raised "serious constitutional concerns." *Lora*, 804 F.3d at 606 (quoting *Demore v. Kim*, 538 U.S. 510, 518–19 (2003) and *Zadvydas*, 533 U.S. at 682, 690). To avoid such concerns, the court of appeals, joining the Ninth and other circuits, held that "mandatory detention for longer than six months without a bond hearing affronts due process." *Lora*, 804 F.3d at 606 (citing *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013). As in *Zadyvas*, a six month period of detention was held reasonable. *Zadyvas* had held that a six-month period of detention following a final order for removal was presumptively constitutional. The Court of Appeals now held that a six-month period of detention while removal proceedings are pending also is presumptively constitutional. "After that point," the Court of Appeals held, "the detainee must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." *Lora*, 804 F.3d at 615–16.

## IV. Discussion

Moises Rone is subject to a final order of removal. The order became final on June 18, 2015, when the BIA affirmed the order of the IJ. However, because of judicial review, the 90-day period for his removal has not yet begun. Rone's petition for review of the BIA order affirming his order of removal is pending before the Second Circuit Court of Appeals. Although Rone moved for a stay of removal, the Court of Appeals declined to act on the motion. Presumably, it declined to act because of the policy of forbearance in effect in the Second Circuit. See *In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012) (policy of forbearance explained as follows):

13

> While a petition is pending in this Court, the Government's
> forbearance policy has assured that removal will not occur. We
> will assume that forbearance will continue while the case remains
> with the agency following our remand and during its return to this
> Court, if that should occur. In the event that the Court and a
> petitioner are advised at any time that this assumption is
> unwarranted, the petitioner may promptly apply for a stay of
> removal.

The Second Circuit has acknowledged that the effect of the forbearance policy on orders for

removal of aliens under § 1231 is unclear. *See Wang v. Ashcroft*, 320 F.3d 130, 147 (2d Cir.

2003).

Several district courts within the Circuit have held that the forbearance policy

does not toll the beginning of the removal period, because it is not formally a court-issued stay.

*Mathews v. Philips*, No. 13-CV-339-JTC, 2013 WL 5288166, at *3 (W.D.N.Y. Sept. 18, 2013);

*Leslie v. Herron*, No. 10-CV-00515 A M, 2010 WL 4226561, at *4 (W.D.N.Y. Oct. 26, 2010)

("I find that the forbearance policy does not toll the removal period."); *D'Alessandro v. Mukasey*,

628 F.Supp.2d 368 (W.D.N.Y. 2009) (finding that detention was pursuant to INA § 1231, where

there was no court-ordered stay); *Oyedeji v. Ashcroft*, 332 F. Supp. 2d 747, 751 (M.D. Pa. 2004)

("the agreement between the Second Circuit and the United States Attorney's Office did not

suspend the running of the removal period.").

At least two district courts have disagreed and have treated the forbearance policy

as the equivalent of a stay of removal. *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197

(W.D.N.Y. 2010) ("[A]lthough Petitioner does not meet the precise definition of 8 U.S.C. §

1231(a)(1)(B)(ii), the Court nevertheless finds that, for purposes of this action, the forbearance

policy is the equivalent of a court-ordered stay of removal."); *Shehnaz v. Ashcroft*, No. 04

CIV.2578 DLC, 2004 WL 2378371, at *2 (S.D.N.Y. Oct. 25, 2004) ("The Second Circuit has not

yet ruled on her requests, but a stay of her removal is in effect pursuant to the 'forbearance policy.'").

The Second Circuit's forbearance may not be a stay, but neither is it a denial of a stay. In the absence of clarification, the Court of Appeals declination to act should not prejudice the petitioner. Rone petitioned for habeas corpus because, as he claims, more than six months of continuous detention without a bail hearing infringes on his constitutional right to due process. He may be subject to many more months of detention before his right to remain in, or be removed from, the United States will be finally determined.

The government purported to give Rone a bail hearing pursuant to *Lora* on November 18, 2015. But the sufficiency of that hearing is suspect. As Rone argues, the IJ seemed to be focused mainly on the order for Rone's removal, and not on whether the government had satisfied its burden to show by clear and convincing evidence that Rone would not appear when ordered to appear, or that he posed a risk to the community. *Lora*, 804 F.3d at 615–16. Certainly the IJ's written orders paid no attention to *Lora*'s requirements, and the BIA's affirmance held that the IJ lacked jurisdiction to do so.

I hold that the Attorney General's forbearance policy in effect in the Second Circuit must be treated, for the purposes of Rone's entitlement to be heard on his bond application, as if a Court had issued a stay of removal pending judicial review. Otherwise, the Court of Appeals' policy of silence on stay motions would be the equivalent of a policy of denial. Section 241, providing for detention during the 90-day removal period, becomes effective only as of the date of the Court's final order, if the Court grants a stay. 8 U.S.C. § 1231. Because the Second Circuit, as a policy, does not grant stays, this statutory tolling provision becomes meaningless if the forbearance is construed as a denial. Until the 90-day removal

period began, the only statutory basis for Rone's detention was Section 236. *See, e.g., Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 948 (9th Cir. 2008); 8 U.S.C. § 1226. During that time, he was entitled to a *Lora* hearing after six months in detention. Rone did not receive such a hearing. At no time was the government required to make a clear and convincing showing, not just that removal was soon to happen, as *Zadvydas* requires, but that Rone was a flight risk or a danger to the community.

## V. Conclusion

For the reasons discussed in this opinion, the petition for habeas corpus is granted. If, within 30 days, ICE fails to give a new *Lora* bail hearing to Rone before an immigration judge (the judge who presided over the case or another), or fails to petition the court of appeals to decide Rone's motion for a stay, Rone shall be released from detention, subject to a $5,000 personal recognizance bond, until final determination of judicial review of the order of removal.

SO ORDERED.

Dated:        March 10, 2016

New York, New York
ALVIN K. HELLERSTEIN
United States District Judge